Matter of Dusch v Erie County Med. Ctr. (2020 NY Slip Op 03351)





Matter of Dusch v Erie County Med. Ctr.


2020 NY Slip Op 03351


Decided on June 12, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


1025 CA 19-00402

[*1]IN THE MATTER OF JAMES D. DUSCH, CLAIMANT-APPELLANT,
v
ERIE COUNTY MEDICAL CENTER AND ERIE COUNTY MEDICAL CENTER CORPORATION, RESPONDENTS-RESPONDENTS. 






BROWN CHIARI LLP, BUFFALO (BRIAN R. HOGAN OF COUNSEL), FOR CLAIMANT-APPELLANT. 
FELDMAN KIEFFER, LLP, BUFFALO (JAMES EAGAN OF COUNSEL), FOR RESPONDENTS-RESPONDENTS. 


 Appeal from an order of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered August 20, 2018. The order denied the application of claimant for leave to serve a late notice of claim. 
It is hereby ORDERED that the order so appealed from is reversed in the exercise of discretion without costs and the application is granted upon condition that claimant shall serve the proposed notice of claim within 30 days of the date of entry of the order of this Court.
Memorandum: Claimant appeals from an order that denied his application for leave to serve a late notice of claim alleging that respondents' negligence in failing to properly monitor him following a surgical skin graft procedure to treat burns resulted in the need to amputate his right leg below the knee. Claimant contends that we should reverse the order and grant his application because his medical records, despite being submitted in reply to respondents' opposition, demonstrate that respondents had actual knowledge of the essential facts constituting the claim during his hospitalization and respondents will not be substantially prejudiced by the delay in service of the notice of claim. We agree.
"Pursuant to General Municipal Law § 50-e (1) (a), a party seeking to sue a public corporation . . . must serve a notice of claim on the prospective [respondent] within ninety days after the claim arises' " (Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 460 [2016], rearg denied 29 NY3d 963 [2017]). "General Municipal Law § 50-e (5) permits a court, in its discretion, to [grant leave] extend[ing] the time for a [claimant] to serve a notice of claim" (id. at 460-461). "The decision whether to grant such leave compels consideration of all relevant facts and circumstances,' including the nonexhaustive list of factors' in section 50-e (5)" (Dalton v Akron Cent. Schools, 107 AD3d 1517, 1518 [4th Dept 2013], affd 22 NY3d 1000 [2013], quoting Williams v Nassau County Med. Ctr., 6 NY3d 531, 539 [2006]). " It is well settled that key factors for the court to consider in determining an application for leave to serve a late notice of claim are whether the claimant has demonstrated a reasonable excuse for the delay, whether the [public corporation] acquired actual knowledge of the essential facts constituting the claim within 90 days of its accrual or within a reasonable time thereafter, and whether the delay would substantially prejudice the [public corporation] in maintaining a defense on the merits' " (Matter of Turlington v Brockport Cent. Sch. Dist., 143 AD3d 1247, 1248 [4th Dept 2016]). "The presence or absence of any given factor is not determinative of the application and, moreover, the factors are directive rather than exclusive' " (Matter of Gumkowski v Town of Tonawanda, 156 AD3d 1481, 1481 [4th Dept 2017]). "While the discretion of Supreme Court [in considering the application] will generally be upheld absent demonstrated abuse[,] . . . such discretion is ultimately reposed in [the Appellate Division]" (Matter of Kressner v Town of [*2]Malta, 169 AD2d 927, 928 [3d Dept 1991]; see Matter of Stowe v City of Elmira, 31 NY2d 814, 815 [1972]; Rechenberger v Nassau County Med. Ctr., 112 AD2d 150, 153 [2d Dept 1985]; Matter of Febles v City of New York, 44 AD2d 369, 372 [1st Dept 1974]; Matter of Crume v Clarence Cent. School Dist. No. 1, 43 AD2d 492, 495 [4th Dept 1974]).
Preliminarily, we note that "the failure of claimant to offer a reasonable excuse for [his] delay in serving a notice of claim . . . is not necessarily fatal to the application' " (Matter of Lindstrom v Board of Educ. of Jamestown City School Dist., 24 AD3d 1303, 1304 [4th Dept 2005]).
As a further preliminary matter, we reject the contention of respondents and the dissent that it is inappropriate under the circumstances of this case to consider the medical records submitted by claimant for the first time in his reply papers. In general, " [t]he function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds [or evidence] for the motion [or application]' " (Matter of Kennelly v Mobius Realty Holdings LLC, 33 AD3d 380, 381 [1st Dept 2006]). "This rule, however, is not inflexible, and a court, in the exercise of its discretion, may consider a claim or evidence offered for the first time in reply where the offering party's adversaries responded to the newly presented claim or evidence" (id. at 381-382; see Bayly v Broomfield, 93 AD3d 909, 910-911 [3d Dept 2012]).
Here, as claimant correctly contends, although he submitted the medical records for the first time in his reply papers, the record establishes that respondents "had ample opportunity to respond to [that submission] during oral argument on the [application] before [the court]" (Bayly, 93 AD3d at 910). Indeed, respondents' counsel argued at length that the medical records were insufficient to establish that respondents had actual knowledge of the essential facts constituting the claim and declined to request permission to submit a surreply despite the repeated suggestion by claimant's counsel that the court could afford respondents such relief if they considered their ability to respond to be inadequate. Thus, under the circumstances of this case, "respondent[s] suffered no prejudice as a result of [claimant's] belated evidentiary submission," and we exercise our discretion to consider it (Kennelly, 33 AD3d at 382).
Upon consideration of the medical records, we agree with claimant that respondents had actual knowledge of the essential facts constituting the claim during his hospitalization. The actual knowledge requirement of General Municipal Law § 50-e (5) "contemplates actual knowledge of the essential facts constituting the claim,' not knowledge of a specific legal theory" (Williams, 6 NY3d at 537; see Wally G. v New York City Health & Hosps. Corp. [Metro Hosp.], 27 NY3d 672, 677 [2016], rearg denied 28 NY3d 905 [2016]). "A medical provider's mere possession or creation of medical records does not ipso facto establish that it had actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury' " (Wally G., 27 NY3d at 677, quoting Williams, 6 NY3d at 537).
Here, however, "the medical records . . . evince that [respondents'] medical staff, by its acts or omissions, inflicted
an[ ] injury on [claimant]' " (id.; see Matter of Khan v New York City Health & Hosps. Corp., 135 AD3d 940, 942 [2d Dept 2016], lv denied 28 NY3d 902 [2016]). The medical records indicate that, following the surgical skin graft procedure, claimant developed swelling beneath the dressings that became constrictive of blood flow to the leg and ultimately caused necrosis, and that respondents' medical staff, for various reasons, had failed to recognize the ischemic nature of the leg and claimant's development of compartment syndrome, thereby eventually necessitating partial amputation of the leg (see Khan, 135 AD3d at 942). We thus conclude that respondents timely acquired actual knowledge of the essential facts constituting the claim (see id.).
We also conclude that claimant met his initial burden of showing that the late notice would not substantially prejudice respondents and, in opposition, respondents failed to make a "particularized showing" of substantial prejudice caused by the late notice (Newcomb, 28 NY3d at 468; see Khan, 135 AD3d at 942).
Based on the foregoing, we exercise our discretion to grant the application (see e.g. [*3]Matter of Rudloff v City of Rochester, 303 AD2d 1052, 1052-1053 [4th Dept 2003]; Matter of Battaglia v Medina Cent. School Dist., 204 AD2d 997, 997-998 [4th Dept 1994]) upon condition that claimant shall serve the proposed notice of claim within 30 days of the date of the entry of the order of this Court.
All concur except Carni and Lindley, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent and would affirm the order inasmuch as we conclude that Supreme Court did not abuse its discretion in denying claimant's application for leave to serve a late notice of claim and we perceive no basis for exercising our discretion to reach a different result.
On an application for leave to serve a late notice of claim pursuant to General Municipal Law § 50-e (5), the claimant bears the initial burden of demonstrating that he or she had a reasonable excuse for failing to serve a timely notice of claim, that the respondent had actual knowledge of the essential facts constituting the claim within the first 90 days or a reasonable time thereafter, and that the late notice would not substantially prejudice the respondent's interests (see Tate v State Univ. Constr. Fund, 151 AD3d 1865, 1865-1866 [4th Dept 2017]; see generally Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 466 [2016], rearg denied 29 NY3d 963 [2017]; Matter of Turlington v Brockport Cent. Sch. Dist., 143 AD3d 1247, 1248 [4th Dept 2016]).
Although we agree with the majority that claimant's proffered excuse was insufficient but not fatal to the application (see Shane v Central N.Y. Regional Transp. Auth., 79 AD3d 1820, 1821 [4th Dept 2010]), we do not agree that claimant met his burden of demonstrating respondents' actual knowledge of the essential facts. In his application, claimant contended that "[i]t has long been held that by virtue of its possession of a Claimant's medical record, a health care provider has actual notice' of the essential facts constituting the claim and cannot show any prejudice as a result of a delay in filing a Notice of Claim," and thus "the hospital must be deemed to have possessed actual notice by reason of its possession of the records of its treatment of claimant for the matter in dispute." However, as the majority notes, the Court of Appeals has specifically held that "[m]erely having or creating hospital records, without more, does not establish actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury on plaintiff" (Williams v Nassau County Med. Ctr., 6 NY3d 531, 537 [2006]; see Wally G. v New York City Health & Hosps. Corp. [Metro. Hosp.], 27 NY3d 672, 677 [2016], rearg denied 28 NY3d 905 [2016]). Claimant did not attach his medical records to his application and submitted no evidence regarding what material within those records provided notice to respondents. Indeed, claimant did not identify any specific facts within the medical records that might provide actual knowledge and instead relied on the rejected rationale that respondents' mere possession of the records was sufficient (see Williams, 6 NY3d at 537). Claimant thus failed to meet his burden of establishing that respondents possessed the requisite actual knowledge.
Although claimant subsequently contended that specific facts reflected in his medical records established respondents' actual knowledge, that contention was improperly raised for the first time in reply submissions before the motion court and thus is not properly before us (see Jackson v Vatter, 121 AD3d 1588, 1589 [4th Dept 2014]). Additionally, claimant attached his medical records for the first time to his reply papers, and we conclude that the court properly declined to consider those records rather than grant respondents an opportunity to submit papers in surreply (cf. Ferrari v National Football League, 153 AD3d 1589, 1590 [4th Dept 2017]; see generally Arriola v City of New York, 128 AD3d 747, 749 [2d Dept 2015]), especially in light of the fact that those records were in claimant's possession at the time of his application and counsel offered no excuse as to why they were not submitted with the application.
Thus, even assuming, arguendo, that respondents suffered no prejudice from the delay, we conclude that the court did not abuse its discretion in denying the application for leave to serve a late notice of claim inasmuch as claimant failed to establish either a reasonable excuse for the failure to serve a timely notice of claim or that the respondents had actual knowledge of the essential facts constituting the claim within the first 90 days or a reasonable time thereafter (see Matter of Candino v Starpoint Cent. Sch. Dist., 115 AD3d 1170, 1172 [4th Dept 2014], affd 24 NY3d 925 [2014]). Moreover, under the circumstances of this case, we are not persuaded that we should exercise our discretion to grant the application for leave to serve a late notice of claim.
Entered: June 12, 2020
Mark W. Bennett
Clerk of the Court